United States District Court
Southern District of Texas
**ENTERED**
August 20, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EVA KRISTINE STRAMASKI, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-00156 |
| | § | |
| TEXAS A&M ENGINEERING | § | |
| EXPERIMENT STATION, ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Before me is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim ("Motion to Dismiss"). *See* Dkt. 18. After considering the parties' submissions and the relevant case law, I recommend that the Motion to Dismiss be **GRANTED** in part and **DENIED** in part.

### BACKGROUND

The following factual summary is based on the allegations set forth in Plaintiff's First Amended Complaint and Jury Demand. Plaintiff Eva Kristine Stramaski ("Stramaski") worked for Texas A&M Engineering Experiment Station ("TEES") as an Academic Advisor within the Department of Industrial and Systems Engineering. Defendant Dr. Mark Lawley ("Dr. Lawley") is the Department Head of the Department of Industrial and Systems Engineering.

Stramaski alleges that TEES personnel informed her on January 31, 2019, that she would not be timely paid on February 1, 2019, but would have to wait until February 5 or 6, 2019 to receive her paycheck. Upset by these statements, Stramaski complained to TEES personnel on several occasions that "she needed to be paid on time, as it was her legal right." Dkt. 14 at 4. On February 1, 2019, a TEES employee told Stramaski that she would be paid on time, and Stramaski was paid by check later that day.

Although Stramaski timely received her paycheck, she alleges that her complaints marked "the beginning of the end for" her employment at TEES. *Id.* She claims "she started experiencing almost instant retaliation at the hands of her department head." *Id.*

On February 13, 2019, Dr. Lawley issued Stramaski a "coaching letter," addressing purported deficiencies in Stramaski's job performance. *Id.* Stramaski maintains that the letter contained "false allegations" and Dr. Lawley was unable to "provide supporting evidence" in a face-to-face meeting. *Id.* at 5. On March 7, 2019, Dr. Lawley terminated Stramaski's employment. Stramaski contends that Dr. Lawley terminated her "in retaliation for requesting to be paid timely." *Id.* More specifically, Stramaski alleges:

> As Department head of one of Texas' finest universities, Dr. Lawley, and or any reasonable official, would know that you cannot terminate someone's employment for asking to be paid timely.
> ….
> By trumping up false and unproven reasons to terminate Plaintiff, Defendant acted knowingly, willfully, and with reckless disregard for the law. Plaintiff would not have been terminated but for her complaints regarding Defendant's failure to issue timely pay under the FLSA.

*Id.*

In this lawsuit, Stramaski brings a single claim against Dr. Lawley for retaliation/wrongful termination under the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3). Dr. Lawley has filed a Motion to Dismiss, arguing that Stramaski's claim for monetary and equitable relief should be dismissed under Rule 12(b)(1) "because: (1) this suit is barred by Eleventh Amendment immunity because the State is the real party in interest; (2) [Stramaski] lacks FLSA standing to seek injunctive relief; and (3) [Stramaski] lacks standing for the declaratory relief she seeks." Dkt. 18 at 1. Dr. Lawley also contends that "dismissal is appropriate under Rule 12(b)(6) because [he] is entitled to qualified immunity." *Id.*

## DISCUSSION

**A. RULE 12(b)(1)**

**1. Legal Standard**

A court must dismiss a suit for lack of subject matter jurisdiction under Rule 12(b)(1) where it lacks the statutory or constitutional power to adjudicate the case. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case."). "On a Rule 12(b)(1) motion to dismiss, the party asserting jurisdiction bears the burden of proving that jurisdiction exists." *Cell Sci. Syst. Corp. v. La. Health Serv.*, 804 F. App'x. 260, 262 (5th Cir. 2020). Subject matter jurisdiction fails if the plaintiff lacks Article III standing. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541–42 (1986). Therefore, when a plaintiff lacks standing to sue in federal court, it is appropriate to dismiss the action pursuant to

Rule 12(b)(1) for want of subject matter jurisdiction. *See Cell Sci. Sys. Corp.*, 804 F. App'x at 266. "When a party files multiple Rule 12 motions, [the district court] must consider the Rule 12(b)(1) jurisdictional attack before considering the Rule 12(b)(6) merits challenge." *Wilson v. Hous. Cmty. Coll.*, 955 F.3d 490, 494 (5th Cir. 2020).

### 2. Eleventh Amendment Immunity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Supreme Court has consistently held that the Eleventh Amendment bars lawsuits from being brought in federal courts against an unconsenting state by her own citizens as well as by citizens of another state. *See Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). Likewise, "[a]n action against a state official in his *official capacity* is an action against the State, and is barred by the Eleventh Amendment, subject only to the limited exception permitted by *Ex Parte Young*, 209 U.S. 123" (1908).[1] *Bellow v. Bd. of Sup'rs of La. State Univ. & Agric. Mech. Coll.*, No. CIV.A. 12-1529, 2014 WL 2203881, at *4 (E.D. La. May 27, 2014). *See also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity . . . should be treated as suits against the State.").

This case involves a lawsuit brought against a state official in his individual capacity, not his official capacity. This distinction is critical. "As a general rule the

---

[1] Under the *Ex Parte Young* doctrine, the Eleventh Amendment does not bar a suit for injunctive relief against state officials in their official capacities alleged to be acting in violation of federal law. *See Ex Parte Young*, 209 U.S. at 155–56.

Eleventh Amendment does not bar suits against [state] officers in their individual capacities." *Modica v. Taylor*, 465 F.3d 174, 183 (5th Cir. 2006). Nonetheless "a suit nominally against state employees in their individual capacities that *demonstrably* has the *identical* effect as a suit against the state" is barred by the Eleventh Amendment. *Henley v. Simpson*, 527 F. App'x. 303, 306 (5th Cir. 2013) (quotation marks and citation omitted). As the United States Supreme Court has explained: "The Eleventh Amendment bars a suit against state officials [sued in their individual capacity] when the state is the real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (internal quotation marks and citation omitted).

So how do we determine in this case if the State of Texas is the real, substantial party in interest? Generally speaking, "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit [under the Eleventh Amendment] even though individual officials are nominal defendants." *Henley*, 527 F. App'x at 306 (quotation marks and citation omitted). Still, the determination as to whether the state is the real, substantial party in interest entails a fact-specific inquiry. *See Modica*, 465 F.3d at 183 ("The application of the Eleventh Amendment to suits against state officials in their individual capacity depends on the circumstances.") (quotation marks, citation, and brackets omitted).

Relying on the Fifth Circuit's decision in *Henley*, Dr. Lawley argues that Stramaski's claim against him "is jurisdictionally barred by Eleventh Amendment immunity because the State of Texas is the true party in interest." Dkt. 18 at 6.

5

Meanwhile, Stramaski directs my attention to the *Modica* case, claiming that the Fifth Circuit's holding that Eleventh Amendment immunity did not extend to a state official sued in his individual capacity is more analogous to the present case. Let me briefly summarize both cases.

In *Modica*, a former employee of the Texas Cosmetology Commission ("TCC") brought suit against the TCC Executive Director alleging wrongful termination in retaliation for exercise of First Amendment rights and for taking leave under the Family and Medical Leave Act ("FMLA"). *See* 465 F.3d at 178. On appeal, the public official argued that the Eleventh Amendment barred the FMLA retaliation claim against him in his individual capacity because the State of Texas was the real party in interest. *See id.* at 183. After noting the well-recognized rule that the Eleventh Amendment does not ordinarily bar lawsuits against state officials in their individual capacities, the Fifth Circuit considered the particular circumstances of the case. *See id.* Because the TCC Executive Director could be held personally liable under the FMLA and forced to pay monetary damages out of his own pocket, the Fifth Circuit concluded that the State of Texas was not the real party in interest. *See id.* at 183–84. Thus, the Eleventh Amendment posed no obstacle to the action proceeding against the TCC Executive Director in his individual capacity. *See id.*

In *Henley*, former highway patrol K-9 officers sued two state officials—the former Commissioner of the Mississippi State Department of Public Safety and the former Director of the Mississippi Highway Patrol—in their individual and official capacities under the FLSA to recover overtime wages incurred in caring for, and training, their

6

service canines while off duty. *See* 527 F. App'x at 304. The district court granted the defendants' motion to dismiss the plaintiffs' claims against them in their official capacity, barred by the Eleventh Amendment, but denied dismissal in their individual capacities. *See id.* The Fifth Circuit reversed and dismissed the defendants in their individual capacities because the state, as the real party in interest, was entitled to Eleventh Amendment protection. *See id.* at 306–07. Suing defendants in their individual capacities to cause the state to compensate the plaintiffs was, according to the Fifth Circuit, an impermissible attempt to make an "end run" around Eleventh Amendment immunity. *See id.* at 307.

Against this backdrop, I conclude that the instant action has much more in common with *Modica* than it has to *Henley*. Here, like the plaintiff in *Modica*, Stramaski brings a retaliation claim, alleging she was terminated for exercising her lawful rights. The underlying premise of a retaliation claim against a state official is that the individual state officer, not the governmental entity as whole, acted in contravention of the law by retaliating against the employee. Although the federal statute at issue in *Modica* (the FMLA) is technically different from the statutory scheme at issue in this case (the FLSA), that is a distinction without a difference when it comes to a retaliation claim. The *Modica* court explained that a state official may be sued in his individual capacity for retaliation under the FMLA, reasoning that a state official is considered an FMLA "employer" who is prohibited from retaliating against an employee for exercising protected activity. *See* 465 F.3d at 184–87. Because "[t]he definition of 'employer' under the FMLA is very similar to the definition of 'employer' under the FLSA," the

7

Fifth Circuit has instructed district courts to interpret the term "employer" the same under both statutes. *Id.* at 186. Following this logic, if a public official may be held individually liable as an "employer" in a retaliation claim brought under the FMLA, there is every reason to believe that a state officer may also be held individually liable in a retaliation claim brought under the FLSA.

Although *Henley* admittedly involves an FLSA claim, it is not a retaliation case, which is an important distinction. The plaintiffs in *Henley* sought overtime pay, challenging the state's compensation policy rather than a wrong caused by an individual actor. Because the supervisors being sued in *Henley* "had no control over the creation of the policies, . . . suing them individually for unlawful policies was not logical and was a thinly veiled attempt at an end-run around" the Eleventh Amendment. *Bellow*, 2014 WL 2203881, at *4. *Henley* is thus easily distinguishable from the present action. Unlike *Henley*, Stramaski does not challenge an established governmental policy, but rather attacks the actions of one individual, Dr. Lawley, for his alleged decision to terminate her employment unlawfully. Thus, if Stramaski succeeds on her FLSA retaliation claim, Dr. Lawley, not the state treasury, would ultimately be responsible for satisfying any monetary judgment.[2] Even *Henley* acknowledges that "the Eleventh Amendment does not preclude monetary relief for past harms when the state official is sued in his

---

[2] As a side note, the Fifth Circuit has held that "the existence of an indemnification statute promising to pay judgments when an officer is sued in his individual capacity does not extend the Eleventh Amendment's protections around the officer." *Hudson v. City of New Orleans*, 174 F.3d 677, 687 n.7 (5th Cir. 1999).

individual capacity and will be personally liable for the judgment." *Henley*, 527 F. App'x at 305. That is exactly the situation present here.

In sum, after carefully reviewing the relevant Fifth Circuit precedent and the alleged facts as set forth in the First Amended Complaint, I conclude that Dr. Lawley, not the State of Texas, is the real party in interest. As a result, the Eleventh Amendment does not bar Stramaski's lawsuit from proceeding against Dr. Lawley in his individual capacity.

### 3. Injunctive Relief

As part of the First Amended Complaint, Stramaski asks this Court to enjoin Dr. Lawley from retaliating further against her because of her protected conduct. Stramaski's claim for injunctive relief fails as a matter of law. As Stramaski's counsel readily admitted at the oral hearing on the Motion to Dismiss, "the right to bring an action for injunctive relief under the [FLSA] rests exclusively with the United States Secretary of Labor." *Powell v. Fla.*, 132 F.3d 677, 678 (11th Cir. 1998) (citing 29 U.S.C. §§ 211(a), 216(b)). *See also Barrentine v. Ark.-Best Freight Sys., Inc.*, 750 F.2d 47, 51 (8th Cir. 1984) ("[O]nly the Secretary is vested with the authority to seek an injunction."). Because Stramaski does not possess the statutory authority to seek injunctive relief under the FLSA, her injunctive relief claim must be dismissed.

### 4. Declaratory Relief

In addition to seeking monetary damages and injunctive relief in her First Amended Complaint, Stramaski also asks the district court to declare that Dr. Lawley

illegally terminated her in retaliation for filing a complaint about her pay potentially being delayed.

Article III of the United States Constitution limits the scope of federal judicial power to the adjudication of "cases" or "controversies." U.S. CONST. art. III, § 2. *See also Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."). "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking . . . declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that [s]he will suffer injury in the future." *Bauer v. Tex.*, 341 F.3d 352, 358 (5th Cir. 2003). *See also Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) ("Because injunctive and declaratory relief cannot conceivably remedy any past wrong, plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury.") (internal quotation marks and citation omitted).

In the First Amended Complaint, there are no alleged facts from which it appears there is a substantial likelihood that Stramaski will suffer continuing harm or a real and immediate threat of repeated injury in the future. If anything, the lawsuit's allegations demonstrate that there is absolutely no threat of future injury. Stramaski's employment with TEES has been terminated. She no longer reports to Dr. Lawley. To the extent improper conduct took place, those actions are done and over. Indeed, Stramaski admits in the live pleading that "[r]einstatement is not feasible." Dkt. 14 at 6. There are simply

no factual allegations "from which the continuation of the dispute may be reasonably inferred." *Bauer*, 341 F.3d at 358. Because any threat of continual retaliation is nothing more than conjectural and hypothetical, dismissal of Stramaski's declaratory relief claim is appropriate.

**B.    RULE 12(b)(6)**

    **1.    Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant is entitled to dismissal when the plaintiff fails to state a claim upon which relief may be granted. The standard applied to a Rule 12(b)(6) motion is quite familiar: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a complaint does not need "detailed factual allegations" to survive a Rule 12(b)(6) motion, a plaintiff must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In considering a Rule 12(b)(6) motion, I must accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). When a "motion to dismiss raises the defense of qualified immunity, the plaintiff 'must plead specific facts that both allow the court to draw the

11

reasonable inference that the defendant is liable for the harm . . . alleged and that defeat a qualified immunity defense with equal specificity.'" *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017) (quoting *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014)).

Because a complaint must be liberally construed in favor of the plaintiff, a motion to dismiss under Rule 12(b)(6) is generally viewed with disfavor and is rarely granted. *See Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009).

### 2. Qualified Immunity

Even if the Eleventh Amendment does not protect him from suit, Dr. Lawley asserts that this case should be dismissed under Rule 12(b)(6) on qualified immunity grounds. Under the judicially-created qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). By protecting "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), the qualified immunity doctrine "promotes the necessary, effective, and efficient performance of governmental duties." *Bellow v. LeBlanc*, 550 F. App'x 181, 183 (5th Cir. 2013).

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012). In the context of a Rule 12(b)(6) motion to dismiss based on qualified immunity, a plaintiff satisfies this burden when the live pleading alleges that: (1) "the official's conduct violated a constitutional or statutory right"; and (2) "the

official's actions constituted objectively unreasonable conduct in light of clearly established law at the time of the conduct." *Bellow*, 550 F. App'x at 183 (internal quotation marks, citation, and brackets omitted). Although I am required at this juncture of the proceedings to scrutinize the actions of Dr. Lawley for objective unreasonableness as alleged in the complaint, s*ee McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002), the complaint must merely set forth "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Importantly, the standard that guides a district court to decide a qualified immunity defense at the Rule 12(b)(6) stage is markedly different from the standard that applies at summary judgment. As noted by the United States Supreme Court:

> [T]he legally relevant factors bearing upon the [qualified immunity] question will be different on summary judgment than on an earlier motion to dismiss. At that earlier stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for "objective legal reasonableness." On summary judgment, however, the plaintiff can no longer rest on the pleadings, and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the [qualified immunity] inquiry.

*Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (citation omitted).

Turning to the First Amended Complaint, it is my view that Stramaski's allegations, taken in the light most favorable to her, easily meet the two-prong qualified immunity test. The thrust of Stramaski's claim is that she was terminated for complaining to management that she needed to be paid on a timely basis. This allegation unquestionably satisfies the first qualified immunity prong: a violation of a statutory right. The FLSA prohibits retaliation against an employee who files a complaint, initiates

proceedings, or assists in the initiation of proceedings under the FLSA. *See* 29 U.S.C. § 215(a)(3). "Although the FLSA does not explicitly require that wages be paid on time, the courts have long interpreted the statute to include a prompt payment requirement." *Rogers v. City of Troy*, 148 F.3d 52, 55 (2d Cir. 1998). *See also Biggs v. Wilson*, 1 F.3d 1537, 1542 (9th Cir. 1993) (collecting cases). Importantly, the Fifth Circuit has specifically held that there is an obligation to pay an employee timely. *See Atl. Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir. 1944) ("[I]f an employer on any regular payment date fails to pay the full amount of the minimum wages and overtime compensation due an employee, there immediately arises an obligation upon the employer to pay the employee."). Because at this early pleading stage I must accept all well-pleaded facts as true, Stramaski has properly alleged in the operative pleading a violation of a statutory right—an FLSA retaliation claim.

I next turn to the second prong of the qualified immunity analysis—whether an official's conduct violated a statutory or constitutional right clearly established at the time of the violation. "To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). The central concept of qualified immunity's second prong is one of "fair warning." *See Hope v. Pelzer*, 536 U.S. 730, 740–41 (2002). By alleging that Dr. Lawley terminated her employment because she complained that she needed to receive her paycheck on a timely basis, Stramaski has done enough to meet the second prong. Given the extensive case law nationwide—including a specific pronouncement from the

Fifth Circuit—specifying that an employee has a right to be paid timely, Dr. Lawley was given "fair warning" that firing Stramaski for asserting her FLSA protected rights would violate her clearly established right to air grievances without retaliation. Accepting the operative pleading's allegations as true, as I must at this point in the case, Stramaski has abrogated Dr. Lawley's qualified immunity defense. I, therefore, recommend that Dr. Lawley's request to dismiss the case under Rule 12(b)(6) based on qualified immunity be denied.

## CONCLUSION

For the reasons stated above, I recommend that Dr. Lawley's Motion to Dismiss (Dkt. 18) be **GRANTED** as to Stramaski's lack of standing to seek injunctive and declaratory relief and **DENIED** as to the Eleventh Amendment and qualified immunity defense.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED in Houston, Texas, this 20th day of August 2020.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE