United States District Court
Southern District of Texas
**ENTERED**
March 03, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| EVA KRISTINE STRAMASKI, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:20-cv-00156 |
| | § | |
| MARK LAWLEY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

This case returns to this court to resolve one question: Is qualified immunity available as a defense under the Fair Labor Standards Act ("FLSA")?

## BACKGROUND

Plaintiff Eva Kristine Stramaski alleges she was fired "in retaliation for requesting to be paid timely." Dkt. 14 at 5. She brings a single claim against Dr. Mark Lawley, a department head within the Texas A&M Engineering Experiment Station, in his individual capacity, for violating the anti-retaliation provision of the FLSA. Lawley moved to dismiss Stramaski's lawsuit, arguing that her FLSA retaliation claim is barred by sovereign immunity and, in the alternative, that he is entitled to qualified immunity. *See* Dkt. 18. I found that neither immunity applied, *see* Dkt. 23, and the district judge adopted my recommendation. *See* Dkt. 25. Lawley then appealed.

On appeal, the Fifth Circuit agreed that "Stramaski's suit is not barred by sovereign immunity, and she can bring her retaliation claim against Lawley in his individual capacity." *Stramaski v. Lawley*, 44 F.4th 318, 326 (5th Cir. 2022). Turning to qualified immunity, the Fifth Circuit noted that this court—and the parties—simply "assumed that the doctrine of qualified immunity applies to claims brought under the FLSA." *Id.*; *see also id.* at 329 (Costa, J., concurring) ("It says something about how much qualified immunity dominates section 1983 litigation

that everyone in the district court—the experienced lawyers and judges alike—assumed the immunity exists whenever a public official is sued."). After expressing its "conviction that substantial analysis is necessary before deciding if qualified immunity ever applies to the FLSA," the Fifth Circuit remanded the qualified immunity issue so "the district court can make the initial resolution of whether the defense applies to the FLSA." *Id.* at 326, 327. In so doing, the Fifth Circuit "identif[ied] some of the analysis that is necessary [to determine whether qualified immunity applies to the FLSA] without reaching a conclusion." *Id.* at 327. Because the Fifth Circuit went on to opine that "Stramaski's claim would be barred by qualified immunity because she does not allege that Lawley violated a clearly established law," the future of this case hinges on the availability of qualified immunity as a defense under the FLSA. *Id.* at 329.

On remand, I apply the test identified by the Fifth Circuit to determine whether qualified immunity is an available defense under the FLSA. After reviewing the parties' supplemental briefing (Dkts. 48, 53–54) and the relevant case law, I find that qualified immunity is unavailable under the FLSA. Accordingly, I recommend Defendant's Motion to Dismiss (Dkt. 18) be **DENIED**.

## LEGAL STANDARD FOR APPLYING THE QUALIFIED IMMUNITY DOCTRINE

In *Stramaski*, the Fifth Circuit "set out the principles for the availability of qualified immunity under a statute." *Stramaski*, 44 F.4th at 327. In a nutshell, qualified immunity applies "to a congressional enactment when two conditions exist: (1) 'the tradition of immunity was so firmly rooted in the common law' and (2) is 'supported by such strong policy reasons that Congress would have specifically so provided had it wished to abolish the doctrine.'" *Id.* (quoting *Wyatt v. Cole*, 504 U.S. 158, 163–64 (1992)).[1] I will refer to this analytical framework as "the *Stramaski* test."

---

[1] In *Wyatt*, the United States Supreme Court considered whether private defendants are entitled to qualified immunity from suit under 42 U.S.C. § 1983. *See* 504 U.S. at 159. The high court noted that although § 1983 "on its face admits of no immunities," *id.* at 163

When considering the first condition—whether there was a tradition of immunity at common law that Congress intended to incorporate in the FLSA—I must "look to the most closely analogous torts" in the common law compared to the conduct covered by the FLSA. *Wyatt*, 504 U.S. at 164; *see also Stramaski*, 44 F.4th at 327. Thus, "the proper inquiry is whether, when Congress enacted the Fair Labor Standards Act's antiretaliation provision, there was a tradition of immunity for a claim alleging intentional retaliation in the workplace." *Stramaski*, 44 F.4th at 331 (Costa, J., concurring).

Even if the first condition is satisfied, a district court shall "not recognize an immunity available at common law if [the FLSA's] history or purpose counsel against applying it in [FLSA] actions." *Wyatt*, 504 U.S. at 164. In other words, the "second condition ensures that availability of immunity at the time of enactment is not dispositive." *Shumaker v. Vilsack*, No. 7:22-cv-00084, 2023 WL 2499341, at *2 (S.D. Tex. Jan. 26, 2023); *see also Owen v. City of Independence*, 445 U.S. 622, 638 (1980) ("Where the immunity claimed by the defendant was well established at common law at the time [the relevant statutory provision] was enacted, and where its rationale was compatible with the purposes of [the statute], we have construed the statute to incorporate that immunity."). Moreover, the second condition acknowledges that "in a textualist world, recognizing an immunity defense when the words of the statute do not provide one is an extraordinary act of interpretation." *Stramaski*, 44 F.4th at 329 (Costa, J., concurring).

---

quotation omitted), "we have accorded certain government officials either absolute or qualified immunity from suit if the 'tradition of immunity was so firmly rooted in the common law and was supported by such strong policy reasons that Congress would have specifically so provided had it wished to abolish the doctrine.'" *Id.* at 163–64 (quoting *Owen v. City of Independence*, 445 U.S. 622, 637 (1980)).

# THE HISTORICAL CONTEXT OF THE QUALIFIED IMMUNITY DOCTRINE AND THE FLSA

## A.   QUALIFIED IMMUNITY

The history of the qualified immunity doctrine is complex and fraught with controversy. Without diving too deep into the fray, I will discuss the aspects of qualified immunity's history relevant to this lawsuit.

The Supreme Court created the earliest version of what is now coined "qualified immunity" in a 1967 suit involving police officers accused of false arrest and imprisonment at common law and under § 1983. *See Pierson v. Ray*, 386 U.S. 547, 550 (1967). Although § 1983 offers no immunities on its face, the Supreme Court concluded that officers defending § 1983 claims should be able to raise defenses that were traditionally available to them at common law. The Supreme Court reasoned that:

> [Section] 1983 should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions. . . . Part of the background of tort liability, in the case of police officers making an arrest, is the defense of good faith and probable cause.
>
> We hold that the defense of good faith and probable cause, which the Court of Appeals found available to the officers in the common-law action for false arrest and imprisonment, is also available to them in the action under [§] 1983.

*Id.* at 556–57 (quotation omitted).

This early form of qualified immunity—created in the context of § 1983 and later extended to *Bivens* actions[2]—involved a subjective component: A public official was not entitled to qualified immunity if the "official knew or reasonably should have known that the action he took within his sphere of official

---

[2] In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, the United States Supreme Court recognized an implied right of action for damages against federal officials alleged to have violated a citizen's Fourth Amendment rights. *See* 403 U.S. 388, 397 (1971). In *Scheuer v. Rhodes*, the Supreme Court held that "in varying scope, a qualified immunity is available to officers of the executive branch of government" in such suits. 416 U.S. 232, 247 (1974).

4

responsibility would violate the constitutional rights of the plaintiff." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (cleaned up). This "knew or reasonably should have known" standard reflects the subjective nature of the good-faith defense available at common law.

In *Harlow*, the Supreme Court abandoned the subjective component of qualified immunity and replaced it with a solely objective inquiry: "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 818. The Supreme Court justified this departure from the common law standard by noting that "substantial costs attend the litigation of the subjective good faith of government officials," including "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Id*. at 816. Later cases acknowledge that *Harlow* "completely reformulated qualified immunity along principles not at all embodied in the common law, replacing the inquiry into subjective malice so frequently required at common law with an objective inquiry into the legal reasonableness of the official action." *Anderson v. Creighton*, 483 U.S. 635, 645 (1987).

**B.    THE FLSA**

Finding that labor conditions in the United States adversely impacted workers' health and efficiency, Congress passed the FLSA in 1938 to "establish[] a minimum wage and overtime compensation for each hour worked in excess of 40 hours in each workweek." *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 31 (2014); *see also* 29 U.S.C. § 202(a). The FLSA did not, however, provide coverage to public employees. The FLSA also "did not define 'work' or 'workweek,' and [the United States Supreme] Court interpreted those terms broadly." *Busk*, 574 U.S. at 31 (discussing *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944) and *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690–91 (1946)).

Congress amended the FLSA in 1947 to respond to the "emergency" created by judicial interpretations of the FLSA. *Busk*, 574 U.S. at 32 (quoting 29 U.S.C. § 251(b)); *see also* 29 U.S.C. § 251(a) ("The Congress finds that the [FLSA] . . . has been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities . . . upon employers."). These amendments included two good-faith defenses. *See* 29 U.S.C. §§ 259–260. Section 259 provides a complete defense to liability if the employer "pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on" administrative pronouncements made by certain federal agencies. *Id.* § 259(a). Section 260 provides a court with discretion to preclude or limit liquidated damages awards "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." *Id.* § 260.

In 1966, another set of amendments expanded the FLSA's scope to cover some public employees. *See Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 533 (1985). Legislative history indicates that the 1966 amendments' purpose was to provide coverage to a broader swath of Americans by "exten[ding] the Act's coverage in such a manner as to completely assume the Federal responsibility insofar as is presently practicable." H.R. REP. NO. 93-913 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 2811, 2819. In 1974, Congress again expanded coverage to include "all state and local employees, save elected officials and their staffs." *Christensen v. Harris County*, 529 U.S. 576, 579 (2000) (citing Fair Labor Standards Amendments of 1974, Pub. L. No. 93-259, 88 Stat. 55 (1974)).

Finally, in 1977, Congress added a private cause of action to enforce the FLSA's antiretaliation provision. *See Pineda v. JTCH Apartments, L.L.C.*, 843 F.3d 1062, 1064 (5th Cir. 2016) (citing Fair Labor Standards Amendments of 1977, Pub. L. No. 95-151, 91 Stat. 1252 (1977)). Before 1977, plaintiffs could sue under the FLSA's minimum wage and overtime provisions, but only the Secretary of Labor

could bring an enforcement action on the antiretaliation provision. *See Pineda*, 843 F.3d at 1064.

## ANALYSIS

### A. WHETHER A TRADITION OF IMMUNITY FOR CLAIMS OF RETALIATORY DISCHARGE IS FIRMLY ROOTED IN THE COMMON LAW

Lawley paints much of his approach to the *Stramaski* test's first condition in broad strokes, arguing that a tradition of immunity is firmly rooted in the common law because "public officials historically enjoyed immunity over their discretionary acts." Dkt. 48 at 15. I acknowledge the litany of case law illustrating historical support for some form of immunity for government officials acting in their discretion. But Lawley's overly broad position fails to satisfy the "statute-specific analysis" I must conduct. *Stramaski*, 44 F.4th at 331 (Costa, J., concurring) ("To find an atextual immunity defense, the court must conduct a statute-specific analysis to determine if common-law immunity from suit was firmly rooted as a protection against a closely analogous tort." (quotation omitted)). I cannot accept the implication of Lawley's argument, which would have me find that the tradition of immunity for government officials is *always* so firmly rooted in the common law whenever public officials exercise discretion.[3]

Despite Lawley's contention that he should not have to propose a closely analogous tort, he nevertheless identifies wrongful discharge—under the broader umbrella of "employment-related challenges"—as the tort available at common law that is most closely analogous to a retaliation claim under the FLSA. Dkt. 48 at 39. Meanwhile Stramaski, echoing Judge Costa's concurrence, identifies the most closely analogous tort as "intentional retaliation in the workplace." Dkt. 53 at 3

---

[3] Lawley ostensibly took this broad approach because he believes that, "outside of the § 1983 context," "a public official should not be required to show a closely analogous tort to obtain qualified immunity" in part because public officials' immunity is "historically *function* based, not *tort* based." Dkt. 48 at 39–40. The Fifth Circuit has already expressed its disagreement with this position. *See Stramaski*, 44 F.4th at 327 ("[W]e look to the most closely analogous torts in the common law compared to the conduct covered by the statute." (quotation omitted)). Accordingly, I do not entertain this argument.

(quoting *Stramaski*, 44 F.4th at 331 (Costa, J., concurring)). I am inclined to agree with Judge Costa and Stramaski.

Lawley's proposed tort of wrongful discharge is outcome-focused, not conduct-focused, and it is so broad that it would encompass arbitrary and thoughtless actions in addition to retaliation. It bears reiterating that "'we look to the most closely analogous torts' in the common law compared to the *conduct* covered by the statute." *Stramaski*, 44 F.4th at 327 (emphasis added) (quoting *Wyatt*, 504 U.S. at 164). The *conduct* at issue in every retaliation statute, including the FLSA's anti-retaliation provision, is the *intent* to defy the statute's purpose. *See* 29 U.S.C. § 215(a)(3) ("[I]t shall be unlawful for any person—to discharge or in any other manner discriminate against any employee *because* such employee has [undertaken a protected activity] related to [the FLSA]." (emphasis added)). Thus, the most closely analogous tort in the common law is retaliatory discharge. *See Retaliatory Discharge*, BLACK'S LAW DICTIONARY (9th ed. 2009) ("A discharge that is made in retaliation for the employee's conduct (such as reporting unlawful activity by the employer to the government) and that clearly violates public policy.").

Having established that the most closely analogous tort is a retaliatory employment action, I next ask "whether there was an immunity at common law [for retaliatory employment actions] that Congress intended to incorporate implicitly into the [FLSA]." *Stramaski*, 44 F.4th at 327 (quotation omitted). Lawley cited a breathtaking number of cases in support of his argument as to the first prong of the *Stramaski* test. Alas, most are irrelevant as they are more recent than the relevant time periods in question[4] or they involve conduct different than the conduct the court is to consider: the conduct covered by the FLSA's antiretaliation provision, which is the intent to defy the purpose of a duly enacted law.

---

[4] "There are two potential dates to focus on. The original FLSA, enacted in 1938, only allowed the Secretary of Labor to bring retaliation claims. A 1977 Amendment to the law created a private cause of action for such claims." *Stramaski*, 44 F.4th at 331 n.2 (Costa, J., concurring).

8

Stramaski highlights that even some of the cases that Lawley cites demonstrate "that immunity failed to exist when public official's 'discretionary actions' were either malicious, corrupt, cruel, or made when acting outside the scope of their authority." Dkt. 53 at 7; *see Kendall v. Stokes*, 44 U.S. 87, 87 n.2 (1845) (Where a public officer "is actuated by malice, cruelty or wilful oppression, the action does lie. . . . And proof may be introduced to show that fact."); *Wilkes v. Dinsman*, 48 U.S. 89, 130 (1849) ("But for acts beyond [a public officer's] jurisdiction, or attended by circumstances of excessive severity, arising from ill-will, a depraved disposition, or vindictive feeling, he can claim no exemption, and should be allowed none under color of his office."); *Otis v. Watkins*, 13 U.S. 339, 344–45 (1815) ("It is not the injury done to an individual, or error of judgment, but malice alone that is the *gist* of prosecutions against a public officer at common law for malfeasance in office."). Lawley contends that "this is immaterial," arguing that the "inquiry here turns on the *existence* of a common law immunity, not the *scope* of that immunity." Dkt. 48 at 19. I struggle to understand this argument because scope defines existence. It seems to me that Lawley wants to be able to point to *any* immunity available for a public official and then graft on the modern-day qualified immunity, even though the common law of the relevant time period would not have permitted a public official to escape answering for the conduct alleged here—intentional retaliation. I refuse to accept that the *Stramaski* test works that way.

One of the most instructive cases I have found on point is *Hayes v. Cape Henlopen School District*, 341 F. Supp. 823 (D. Del. 1972). As I discuss *Hayes*, keep in mind that it was decided during a particularly relevant time period—just a few years before Congress would enact the FLSA's antiretaliation provision. In *Hayes*, a school district's secretary sued individual Board members in their official and individual capacities, alleging that "the decision not to rehire Mrs. Hayes was motivated by the Board's desire to retaliate against them for Mr. Hayes' activities." *Id.* at 835. The individual Board members argued that they were immune to suit and entitled to dismissal. The court agreed, citing *Pierson*, that "[a]s public officials

9

exercising discretion while performing their duties, the individual defendants possess a qualified privilege precluding *liability* for the performance of official responsibilities if undertaken in good faith," but observed that "the privilege is not an absolute defense and may not bar recovery in the appropriate factual situation." *Id.* at 829 (emphasis added) ("To prevail the plaintiffs must establish the individual defendant's bad faith in the decision not to rehire Mrs. Hayes."). The *Hayes* court went on to remark that

> the employment decisions of public employers are not immune from judicial scrutiny nor permitted to be motivated by any reason whatsoever. Had the defendants terminated Mr. Hayes for his negotiating activities or Mrs. Hayes for the exercise of her freedom of speech, their decision would have violated the plaintiffs' constitutional rights and would be prohibited.

*Id.* at 836; *see also Murphy v. City of Topeka-Shawnee Cnty. Dep't of Labor Servs.*, 630 P.2d 186, 191 (1981) (finding that individual government officials were not immune where they were sued for retaliation, which would have been "in abuse of their authority" and therefore outside the bounds of immunity).

I recognize that *Hayes* dealt with alleged constitutional violations as opposed to alleged statutory violations, and that *Hayes* applied the earliest version of qualified immunity under *Pierson* as opposed to common law immunity. But the key takeaway from *Hayes*, as I see it, is that when the plaintiff alleged, in 1972, that the adverse employment action against her was undertaken *because* of a (constitutionally) protected activity, the court refused to allow the defendant-public officers to escape answering that charge.[5] In other words, there was no tradition of immunity for retaliatory discharge. But even if I am wrong about that, there is unquestionably *zero* public policy that supports immunity for retaliation.

---

[5] I also find it instructive that when, in 1979—roughly two years after the passage of the FLSA's anti-retaliation provision—the Secretary of Labor sued an Arkansas school district for retaliatory discharge under the FLSA, the question of immunity was not raised.

B.   **POLICY REASONS DO NOT SUPPORT A FINDING OF QUALIFIED IMMUNITY FOR RETALIATION UNDER THE FLSA**

Stramaski and Lawley analyze the *Stramaski* test's second condition—whether the tradition of immunity is supported by such strong policy reasons that Congress would have specifically so provided had it wished to abolish the doctrine—by first considering the policy reasons supporting qualified immunity. The parties then take opposing stances on whether extending the doctrine to the FLSA would advance the purposes of qualified immunity. *See* Dkt. 48 at 24–25; Dkt. 53 at 10–11. This approach to the second condition, however, is misguided. It is clear from *Wyatt*, the Supreme Court opinion the Fifth Circuit used to fashion the *Stramaski* test, that I must consider whether the "*tradition of immunity . . .* was supported by such strong policy reasons that Congress would have specifically so provided had it wished to abolish the doctrine." *Wyatt*, 504 U.S. at 164 (emphasis added) (quotation omitted). In other words, I must look back in time to the tradition of immunity and the FLSA's history instead of making an ex post facto conclusion based solely on modern-day justifications for qualified immunity. This approach is in line with the Supreme Court's acknowledgment that it "do[es] not have a license to establish immunities [in statutes] in the interests of what we judge to be sound public policy." *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (quotation omitted). Instead, a court's "role is to interpret the intent of Congress in enacting [the statute at issue], not to make a freewheeling policy choice." *Id.* (quotation omitted).

Considering these basic legal principles, I must determine whether (1) "Congress 'intend[ed]' to incorporate concepts of qualified immunity when it explicitly created a more limited defense of good faith in the FLSA," *Stramaski*, 44 F.4th at 327, and (2) the FLSA's history and purpose indicates support for qualified immunity.

### 1. The FLSA's Good-Faith Defenses

As explained above, Congress added two defenses to the FLSA in 1947 that reprieved employers from liability for their actions made in good faith. *See* 29 U.S.C. §§ 259–260. In *Stramaski*, Judge Costa observed that "when Congress creates specific statutory defenses—which it did not do when enacting section 1983 in the Civil Rights Act of 1871—it likely does not intend to incorporate general common law defenses as well." *Stramaski*, 44 F.4th at 330 (Costa, J., concurring). I agree.

For example, the D.C. Circuit in *Berry v. Funk* held that qualified immunity is unavailable under the Wiretap Act, agreeing with the appellant that "the qualified immunity doctrine applied to constitutional torts and § 1983 actions has no application to [the appellant's] statutory claims." 146 F.3d 1003, 1013 (D.C. Cir. 1998). The court further explained that this was so because the Wiretap Act

> provides a complete defense for "a good faith reliance on a court warrant or order, a grand jury subpoena, a legislative authorization, or a statutory authorization." 18 U.S.C. § 2520(d) (1994). . . . When Congress itself provides for a defense to its own cause of action, it is hardly open to the federal court to graft common law defenses on top of those Congress creates.

*Id.* (cleaned up). Similarly, a district court in the Northern District of California declined to allow a party to raise qualified immunity under the Stored Communications Act, a statute with a "comprehensive, free-standing liability scheme[], complete with statutory defenses." *Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974, 1009 (N.D. Cal. 2006).

Two circuit courts have found the presence of statutory defenses inconsequential to the availability of qualified immunity. The Sixth and Eleventh Circuits starkly oppose the D.C. Circuit, holding that qualified immunity is available under the Wiretap Act. Both courts relied on the policy reasons supporting qualified immunity to justify the defense's availability. *See Tapley v. Collins*, 211 F.3d 1210, 1216 (11th Cir. 2000) ("'We would not strip a judge or prosecutor of absolute immunity because the claim related to a statutory violation

and the statute provided an affirmative defense. By the same token, police officers and public officials performing governmental functions should not lose their qualified immunity because of an affirmative defense which might or might not protect them but would, in all events, require they be subject to extended litigation and deprive them of the benefits of qualified immunity.'" (quoting *Blake v. Wright*, 179 F.3d 1003, 1012 (6th Cir. 1999))). I afford no weight to the *Tapley* and *Blake* decisions, however, because they incorrectly focus their analysis on the policy reasons supporting qualified immunity and "wrongly assume that immunity is the default and exists unless Congress states otherwise." *Stramaski*, 44 F.4th at 330 (Costa, J., concurring).

Lawley argues that the "FLSA's good faith provisions couldn't have been intended to abolish public officials' qualified immunity" because the good-faith defenses were added to the FLSA *before* Congress expanded the statute's coverage to public employees. Dkt. 48 at 12. But with this argument, Lawley attempts to impose a modern version of qualified immunity on a Congress that, after 1967 and before 1982, understood qualified immunity to provide only a subjective, good-faith defense to public officials. Lawley is correct that the good-faith defenses under the FLSA initially applied only to private employees. Yet when Congress first expanded the FLSA's coverage to public employees in 1966, the Supreme Court was still a year away from adopting the concept of qualified immunity in *Pierson*. In 1974, when Congress expanded the FLSA to cover more public employees, the good-faith defenses in the FLSA that were available to public employees were just as broad as the qualified immunity created in *Pierson*, with each having a subjective component. In other words, the FLSA's good-faith defenses were akin to a codification of the common law defense. It was not until 1982 in *Harlow* that qualified immunity diverged from its common-law origins. At no point in the relevant history of the FLSA amendments could Congress have indicated an intent to abrogate the objective form of qualified immunity to which Lawley refers to because that understanding of qualified immunity did not exist until 1982.

One might argue that if Congress intended the FLSA's good-faith defenses to operate as the traditional good-faith defense available to public officials at common law, then it likely intended for qualified immunity to continue to apply to public officials even as the judiciary expanded the definition of qualified immunity. But, as explained above, qualified immunity has grown far beyond its common-law origins. To reiterate, the Supreme Court has acknowledged that in *Harlow*, "the Court completely reformulated qualified immunity along principles not at all embodied in the common law, replacing the inquiry into subjective malice so frequently required at common law with an objective inquiry into the legal reasonableness of the official action." *Anderson*, 483 U.S. at 645.[6]

Here, my task is to decide whether qualified immunity is available as a defense in a situation completely divorced from § 1983 and *Bivens* actions: under the FLSA, a statute enacted by Congress with enumerated defenses to liability. Moreover, the Fifth Circuit has instructed me to consider whether policy reasons support a finding that Congress, at the time of the FLSA's enactment or at any relevant time afterward, would have expressly abrogated qualified immunity. Simply put, I must look at Congressional intent.

### 2. *The FLSA's History and Purpose Counsel Against Applying Qualified Immunity to FLSA Actions*

Assuming Lawley would have enjoyed immunity at common law, I "will not recognize an immunity available at common law if [the FLSA]'s history or purpose counsel against applying it in [FLSA] actions. *Wyatt*, 504 U.S. at 164.

---

[6] Although the Supreme Court in *Anderson* indicated that "the precise contours of official immunity" need not "be slavishly derived from the often arcane rules of the common law," 483 U.S. at 645, the implications of this statement do not reach this case. *Anderson* involved a *Bivens* action, a judicially created cause of action for constitutional violations by federal officials. Moreover, the Supreme Court in *Anderson* was considering whether it should create an exception to qualified immunity—not whether qualified immunity is available to federal agents, as that issue had been previously resolved. *See Scheuer*, 416 U.S. at 247–48.

The Fifth Circuit has once before considered whether qualified immunity is available under a statute other than § 1983 or *Bivens* actions. In *Samuel v. Holmes*, the Fifth Circuit determined that qualified immunity is unavailable for retaliation suits under the False Claims Act ("FCA"). *See* 138 F.3d 173, 178 (5th Cir. 1998).[7] In so doing, the Fifth Circuit stated that

> qualified immunity seems particularly ill-suited in this context, given the goals of the FCA . . . to discourage fraud against the government, and the whistleblower provision [that] is intended to encourage those with knowledge of fraud to come forward. Granting government officials the protection of qualified immunity would hardly spur reluctant employees to step forward.

*Id.* (quotation omitted).

The analysis in *Samuel* tracks the Supreme Court's guidance that a statute's purpose is relevant in determining whether Congress intended qualified immunity to be available. *See Wyatt*, 504 U.S. at 164 (proclaiming that a court shall "not recognize an immunity available at common law if [the statute]'s history or purpose counsel against applying it"); *Buckley*, 509 U.S. at 268 ("Our role is to interpret the intent of Congress in enacting § 1983, not to make a freewheeling policy choice." (cleaned up)). "The principal congressional purpose in enacting the [FLSA] was to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (citing 29 U.S.C. § 202(a)). The purpose of the FLSA's antiretaliation provision is "to secure [the FLSA's] substantive protections by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the [FLSA]'s basic guarantees." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir. 2008) (quotation omitted). Lawley does not identify—and I cannot find—authority indicating that Congress intended for

---

[7] The Fifth Circuit has applied qualified immunity in cases involving the Family and Medical Leave Act ("FMLA"). *See Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 769–71 (5th Cir. 2015); *Rutland v. Pepper*, 404 F.3d 921, 924 (5th Cir. 2005). In *Bryant* and *Rutland*, however, the Fifth Circuit assumed, with no analysis, that qualified immunity was available under the FMLA.

15

public officials to be broadly immune from FLSA actions. To find such immunity would surely frustrate the FLSA's purpose in permitting a private right of action to enforce the antiretaliation provision.

Considering the FLSA's statutory defenses and the divergence of modern qualified immunity from the common law good-faith defense, I find the tradition of immunity is not supported by strong policy reasons. Therefore, the second condition of the *Stramaski* test is not satisfied, and qualified immunity is unavailable under the FLSA.

## CONCLUSION

Because I find that qualified immunity is not an available defense under the FLSA, I recommend that Defendant's Motion to Dismiss (Dkt. 18) be denied.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 3rd day of March 2025.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE